*102
 
 Manly, J.
 

 After digesting as well as we can the facts of this case, we are unable to perceive the ground on which the-defendant was held liable for the value of Bland’s produce. It seems that Wm. Bland, the intestate of plaintiffs, the defendant, Scott, and a person by the name of Bryan, sent produce down the Cape Fear river on the same boat. The defendant, in putting the freight on board at Haywood, the place of departure, acted as the agent of Bland. The produce was consigned, by the agreement of all concerned, to J. S. Banks, of Wilmington, as a factor, to dispose of it for the benefit of each consignor. The produce was transmitted in February, and in the month of March, a draft on B. B. Blossom and Son, of New York, was sent to Scott for the entire proceeds. This draft was discounted by A. T. Lambeth, at the instance of Scott, and on the 20th of March, Bryan’s proportion of it was paid to him by Scott, viz., $396,96. The draft was dishonored and returned, and an arrangement was then made by Banks with Scott and Lambeth, to draw again for the amount of $750, on the same house in New York in favor of Lambeth, which was accordingly done, and on this draft $353,08 was received by Lambeth. It seems that Scott then refunded to Lambeth the proceeds of the draft less the $353,08 received on the same, saying, as lie produced a part of the money, viz., $290, that it was Bland’s money.
 

 Thus, it will be seen, that of the common adventurers in this enterprise, Bryan has received the proceeds of his produce; Bland has not- received any thing, and Scott, the defendant, has not only not received any thing, but has suffered a loss over and above of $43,88, except he derive some indemnity from the salt and safe referred to i'n the evidence.
 

 The case states that Scott acted as the agent of Bland in starting the produce to Banks, but after that,, it is not stated that he was to be responsible. Banks is the consignee and factor, alike of all, and upon the delivery of the produce he became responsible to each. That is our conclusion on the state of the facts presented to us in the record.
 

 The question, then, is, did the defendant’s interference in th©
 
 *103
 
 matter, as a volunteer in respect to Bland and Bryan, without any interest in the transactions, except to the extent of his part of the proceeds of sale, make him responsible to the others? We think not.
 

 If it be assumed that, having accepted a bill, payable to himself for the whole proceeds, and having attempted its collection, he has made himself liable for ordinary care and diligence, we think these have been exerted. It is clear, the defendant is not at all liable for the delinquenees or want of fidelity in Banks. The latter was as much the factor of the plaintiff as of the defendant, and the latter can only be subjected to responsibility in case some act or omission on his part, in relation to the fund sent him, was contrary to the eourse of a man of ordinary prudence in the management of his own affairs. What, then, is his conduct in this respect? He takes the draft sent, embracing the sum due himself as well as the sums due Bryan and Bland. He procures it to be discounted and is proceeding to distribute the proceeds, when the draft is returned dishonored by the drawee. Another draft is then taken from Banks, and upon this is paid $353,08. It is dishonored as to the balance. Banks fails, and the defendant being liable upon his endorsement, refunds the money in hand, arising from the discount of the bill. By reference to the dates of these transactions, it will be perceived that all this is done from about the middle of March to the middle of April.
 

 It seems to us, after the false step of consigning to an untrustworthy factor, for which defendant is not responsible, due diligence was used in endeavoring to make available the fund sent, and defendant is not responsible for the failure.
 

 Upon the state of facts reported, therefore, we differ from his Honor as the personal responsibility of the defendant to make good the loss. What may be the rights of the parties, respectively, in the funds actually received, we are not now called upon to say. There should be a
 
 venire ele novo.
 

 Per Curiam,
 

 Judgment reversed.